1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11  MICHELLE SIMPSON,                          )    NO. CV 11-10674-MAN
                                               )
12              Plaintiff,                      )
                                               )    MEMORANDUM OPINION
13         v.                                   )
                                               )    AND ORDER
14  CAROLYN W. COLVIN,[1]                       )
    Acting Commissioner of Social              )
15  Security,                                   )
                                               )
16              Defendant.                      )
    _____)

17

18

19      Plaintiff filed a Complaint on December 27, 2011, seeking review of

20  the denial by the Social Security Commissioner ("Commissioner") of

    plaintiff's application for supplemental security income benefits
21
    ("SSI").  On February 3, 2012, the parties consented, pursuant to 28
22
    U.S.C. § 636(c), to proceed before the undersigned United States
23
    Magistrate Judge.  The parties filed a Joint Stipulation on September
24
    24, 2012, in which:  plaintiff seeks an order reversing the
25
    Commissioner's decision and awarding benefits or, alternatively,
26

27
    _____
28       [1]    Carolyn W. Colvin became the Acting Commissioner of the Social
    Security Administration on February 14, 2013, and is substituted in
    place of former Commissioner Michael J. Astrue as the defendant in this
    action.  (*See* Fed. R. Civ. P. 25(d).)

remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 27, 2009, plaintiff filed an application for SSI, alleging an inability to work since February 1, 2005, due to a "[s]elf-inflicted gun shot to [her] head," "mental issues," "w[a]nders," "falls often," "anger," "visual loss," and "no memory." (Administrative Record ("A.R.") 23, 69, 178.)

The Commissioner denied plaintiff's application. (A.R. 69-73.) On November 30, 2010, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Keith Dietterle (the "ALJ"). (A.R. 48-67.) Susan Allison, a vocational expert, also testified. (*Id.*) On December 22, 2010, the ALJ denied plaintiff's claim (A.R. 23-32), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-6). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff had not engaged in substantial gainful since January 27, 2009, the date her SSI application was filed. (A.R. 25.) The ALJ determined that plaintiff has the severe impairments of "organic mental disorder" and "visual disturbance," but she does not have an impairment or combination of impairments that meets or medically

equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "medium work as defined in 20 C.F.R. [§] 416.967(c)," with the following limitations:

> [Plaintiff can] sit 6 hours out of an 8-hour day; stand and walk 6 hours out of an 8-hour day; occasionally lift 50 pounds; frequently lift 25 pounds; frequently climb stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; no jobs requiring binocular vision, or depth perception; should not work at unprotected heights, around dangerous or fast moving machinery, around open pools of water; no driving automotive equipment; and is capable of doing only simple, routine tasks.

(A.R. 27.)

The ALJ found that plaintiff has no past relevant work. (A.R. 30.) Additionally, after having considered plaintiff's age, education, work experience, and RFC, the ALJ found that other jobs exist in the national economy that plaintiff could perform, including "[c]leaner, hospital," "[d]ining [r]oom [a]ttendant," and "[b]akery [w]orker." (A.R. 31.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since January 27, 2009, the date her SSI application was filed. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

## DISCUSSION

Plaintiff alleges the following issues:  whether the ALJ properly considered the opinions of Dr. Tina Allee, Dr. George Demos, and Dr. Edward Dunbar; and whether the ALJ properly considered plaintiff's subjective complaints.  (Joint Stipulation ("Joint Stip.") at 6.)

**I.   The ALJ Failed To Give Specific And Legitimate Reasons For Rejecting The Opinions Of Drs. Allee, Demos, and Dunbar And Relying, Instead, On The Opinion Of Dr. McGee.**

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. § 416.927(d).  It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d

5

1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. <u>Magallanes</u>, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only based upon "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). When contradicted by another doctor, the opinion of a treating or examining physician may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.* It is well established that when a treating physician's opinion is contradicted, the ALJ must assess its persuasiveness in view of specified factors, including the "length of the treatment relationship and the frequency of examination"; the "nature and extent of the treatment relationship"; and the consistency of the treating physician's opinion "with the record as a whole." Orn, 495 F.3d at 631.

In determining plaintiff's mental RFC, the ALJ rejected the opinions of Dr. Tina Allee and Dr. George Demos, apparently ignored or failed to consider the opinion of Dr. Edward Dunbar, and found persuasive the opinion of one-time consultative examiner Dr. Halimah McGee, a clinical psychologist. (A.R. 29.) The ALJ expressly gave "little weight" to treating psychiatrist Dr. Allee's opinion that: plaintiff would be unable to work, because she would miss more than three days of work per month due to her condition; and she is incapable of even low stress work. (*Id.*) The ALJ also gave "little weight" to

the opinion of examining[2] psychologist Dr. Demos that plaintiff is extremely unstable and unable to work, because she would miss more than three days of work per month due to her condition. (*Id.*)  The ALJ utterly failed to address the opinion of Dr. Dunbar.

Instead, the ALJ gave "great weight" to Dr. McGee's finding that plaintiff had "some problems with her attention, concentration and memory," but she was "still capable of learning a routine skill and . . . handling work stress and interacting appropriately with others at a worksite." (A.R. 29, 239; internal citation omitted.)  As a result, the ALJ determined that plaintiff would only be limited to "performing simple, routine tasks." (*Id.*)

A.   Dr. Tina Allee

In an August 10, 2010 "Psychiatric/Psychological Impairment Questionnaire," Dr. Allee, who treated plaintiff four times between March 18, 2010, and July 27, 2010, diagnosed plaintiff with "mood disorder NOS," "PTSD," "[history] of methamphetamine abuse," and assessed her with a Global Assessment of Functioning ("GAF") score of 35.[3]  (A.R. 310.)  Dr. Allee opined that plaintiff was "moderately

---

[2]    Plaintiff asserts that Dr. Demos was a treating psychologist; however, as discussed *infra*, the Court finds that Dr. Demos was an examining psychologist.

[3]    The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, 34 (rev. 4th ed. 2000).  A rating of 31-40 reflects "[s]ome impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood

limited" in the following work functions:  ability to understand and remember one or two step instructions; ability to carry out simple one or two step instructions; ability to ask simple questions or request assistance; and ability to travel to unfamiliar places or use public transportation.  (A.R. 312-13, 315.)  Dr. Allee opined that plaintiff was "markedly limited" in all other areas of understanding and memory, sustained concentration and persistence, social interactions, and adaptation.  (*Id.*)  Plaintiff's primary symptoms were "irritability, depressed mood, paranoia, poor sleep, suicidal ideation, [and] poor impulse control." (A.R. 314.)  Dr. Allee also opined that plaintiff had a low IQ or reduced intellectual functioning due to her memory loss after her gunshot wound to the head.  (A.R. 316.)  Dr. Allee concluded that plaintiff was incapable of even "low stress" work and would miss work more time three times a month as a result of her impairments and treatment.  (A.R. 317.)

The ALJ rejected Dr. Allee's opinions, as set forth in the Questionnaire, because:  Dr. Allee's treatment of plaintiff was inconsistent with the limitations Dr. Allee assessed; and plaintiff's treatment was "helpful" when she "fully complie[d] with the treatment regimen."  (A.R. 29.)  These reasons were neither specific nor legitimate reasons for rejecting Dr. Allee's opinion.

First, the ALJ's contention that on "*each occasion*, Dr. Allee noted

---

(*e.g.*, depressed man avoids friends, neglects family, and is unable to work . . . )." *Id.*  A rating of 41-50 reflects "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.*

that . . . the treatment recommended is helpful, when [plaintiff] fully complies with the treatment regimen" is a mischaracterization of the record.[4] (A.R. 29; emphasis added). The Court does not find anywhere in the record, let alone on "each occasion," that Dr. Allee opined that plaintiff's treatment was "helpful." (*Id.*) Even assuming that the ALJ could reasonably infer such an opinion from Dr. Allee's treatment notes,[5] the ALJ fails to explain how this "helpful" treatment is inconsistent with Dr. Allee's assessment of plaintiff's functional limitations. That plaintiff's treatment is "helpful" does not, *ipso facto*, mean that she does not suffer from the mental impairments assessed by Dr. Allee. Indeed, the ALJ acknowledged that Dr. Allee found that plaintiff still had "problems," despite her treatment. (A.R. 29.) For example, as reflected in Dr. Allee's March 23, 2010 progress notes, plaintiff reported her medication was helping, but Dr. Allee observed that plaintiff was anxious, less labile, and paranoid at times. (A.R. 334.) On that same date, Dr. Allee assessed plaintiff with a GAF score of 50[6] -- which indicates that plaintiff continued to have "serious symptoms"

---

[4]    *See, e.g.*, Reddick v. Chater, 157 F.3d 715, 722–23 (9th Cir.1998)(the ALJ erred in developing the evidentiary basis for his finding by not fully accounting for all evidence of record and by inaccurately paraphrasing portions of the record; Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(it was error for an ALJ to ignore or misstate the competent evidence in the record to justify her conclusion).

[5]    Plaintiff reported improved symptoms soon after starting mental health treatment, and it could be inferred from Dr. Allee's treatment notes that plaintiff's symptoms were worse when she was not taking her medication. (A.R. 332–34.)

[6]    A rating of 41–50 reflects "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, DSM–IV-TR, 34.

that could affect her ability to engage in and maintain full-time work
-- and thus, this GAF score is consistent with, rather than contrary to,
Dr. Allee's Questionnaire findings.  (A.R. 332-24, 339.)

Next, the ALJ's contention that Dr. Allee's treatment of plaintiff
shows she is "less limited than Dr. Allee indicated in the
[Q]uestionnaire" (A.R. 29) fails to reach the level of specificity
required for rejecting a medical opinion.  Embrey v. Bowen, 849 F.2d
418, 421-22 (9th Cir. 1988)("To say that medical opinions are not
supported by sufficient objective findings or are contrary to the
preponderant conclusions mandated by the objective findings does not
achieve the level of specificity our prior cases have required . . . .
The ALJ must do more than offer his conclusions.  He must set forth his
own interpretations and explain why they, rather than the doctors', are
correct.")(footnote omitted).  In any event, when Dr. Allee last treated
plaintiff, on July 27, 2010, Dr. Allee noted that plaintiff was in need
of "psychiatric stabilization," and she "would have to come into the
hospital." (A.R. 332.)  However, "[w]hile security was being called and
[a] hold was being written, [plaintiff] and her husband AWOLED (left
[the] exam room).  [Plaintiff] had not been served papers yet, but did
know that we were going to hospitalize her." (Id.)  Dr. Allee's belief
that plaintiff needed psychiatric hospitalization is consistent with the
limitations Dr. Allee assessed less than two weeks later in her August
10, 2010 Questionnaire concerning plaintiff.

Dr. Allee is uniquely qualified to:  opine as to plaintiff's mental
limitations; assess whether plaintiff can withstand the normal stresses
associated with work; and estimate how many days of work plaintiff

10

likely would miss due to her impairments and treatment.  Thus, the ALJ cannot legitimately reject Dr. Allee's opinion based upon some evidence that plaintiff's treatment, when she was compliant, was helpful.  If the ALJ questioned whether there was an objective basis for Dr. Allee's opinion, the ALJ should have conducted an "appropriate inquiry" by re-contacting Dr. Allee.  *See* Sims v. Apfel, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 2085 (2000); *see also* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(noting that "[i]f the ALJ thought he needed to know the basis of [the doctors'] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry").

In sum, it appears that the ALJ attempted to discredit Dr. Allee's opinion by ignoring competent evidence in her progress notes concerning plaintiff.  As such, the ALJ did not provide specific and legitimate reasons for discrediting Dr. Allee's opinion.

B.   Dr. George Demos

On February 12, 2010, after administering several psychological tests, Dr. Demos diagnosed plaintiff with "bi-polar disorder, severe," "major depression, recurrent, severe," and "[PTSD], chronic and severe." (A.R. 301-08.)   Dr. Demos then determined that plaintiff is an "extremely emotionally disturbed individual" and is "unlikely to be able to work in the competitive labor market."  (A.R. 302.)

On September 3, 2010, in his "Psychiatric/Psychological Impairment Questionnaire," Dr. Demos diagnosed plaintiff with "organic brain damage (gun shot wound)," "bi-polar disorder, severe," "P.T.S.D., chronic," and

11

"major depression, recurrent."  (A.R. 321.)   Dr. Demos noted that plaintiff's lowest GAF score in the past year was 40, and her current score was 50.  (*Id.*)  Dr. Demos opined that plaintiff was "moderately limited" in the following work functions:  ability to understand and remember one or two step instructions; ability to carry out simple one or two-step instructions; ability to sustain ordinary routine without supervision; ability to make simple work related decisions; ability to ask simple questions or request assistance; and ability to be aware of normal hazards and take appropriate precautions.  (A.R. 324-26.)  Dr. Demos opined that plaintiff was "markedly limited" in all other areas. (*Id.*)  Dr. Demos also noted that plaintiff deteriorates under stress, is anti-social, and is very forgetful due to her brain damage.  (A.R. 326.) He concluded that plaintiff would likely be absent from work more than three times a month as a result of her impairments and treatment.  (A.R. 328.)

    The ALJ rejected Dr. Demos' opinion that plaintiff was incapable of working, because the ALJ concluded that Dr. Demos' reports contained "only opinions and show[ed] no continuous treatment relationship."  (A.R. 29.)  Specifically, the ALJ notes that Dr. Demos treated plaintiff on an "as needed basis," and no other records show that he "ever treated [plaintiff] or performed any counseling sessions." (*Id.*)  The Court agrees with the Commissioner that Dr. Demos appears to have acted as an examining physician, not as a treating physician, because there is no evidence that Dr. Demos oversaw a course of treatment aimed at alleviating plaintiff's symptoms. (*See* A.R. 301-08, 319, 321-28.) However, Dr. Demos' status as an examining physician, and not a treating physician, is not dispositive of whether the ALJ

12

correctly assessed Dr. Demos' opinion, because an ALJ is obligated to take into account all medical opinions of record.  Thus, the absence of an ongoing treatment relationship between plaintiff and Dr. Demos does not constitute a legitimate reason for rejecting his opinion.

The ALJ's next reason for rejecting Dr. Demos' opinion –– *to wit*, "there are few treatment records in the file that show [plaintiff suffers from] an extreme condition or one that is not helped by treatment or medication" -- is also unpersuasive.  (A.R. 29.)  As discussed above, the fact that plaintiff's treatment/medication may be "helpful" does not establish that plaintiff would not be limited in the ways indicated by Dr. Demos.

Contrary to the ALJ's assertion, Dr. Demos' findings are supported by Dr. Demos' own objective findings, as well as the findings of Dr. Allee.  (A.R. 301-08, 321-28.)  Significantly, Dr. Allee is the only treating physician of record; and Dr. Allee and Dr. Demos similarly found in their respective Questionnaires that plaintiff was either moderately or markedly limited in all work functions, she would miss work more than three days a month due to her impairments or treatment, and she was limited in her ability to work due to stress.  (*See* A.R. 310-17, 321-28.)  Further, as discussed above, the fact that Dr. Allee had recently recommended hospitalization to psychiatrically stabilize plaintiff supports Dr. Demos' finding that plaintiff was unable to work due to her mental impairments. Given that there are more than a "few" treatment notes that lend support to Dr. Demos' findings, the ALJ's rejection of Dr. Demos' opinion as unsupported by objective evidence is

13

1  not based on substantial evidence of record.[7]

2

3      Accordingly, the ALJ should revisit his consideration of Dr. Demos'

4  opinion on remand.   The ALJ then must give this opinion the deserved

5  weight or give appropriate reasons for not doing so.

6

7           C.   Dr. Edward Dunbar

8

9      On January 21, 2010, Dr. Edward Dunbar, an examining psychologist,

10 completed a psychological evaluation of plaintiff to "assess gross

11 mental processes, psychological symptoms, and cognitive functions as

12 related to vocational rehabilitation readiness."   (A.R. 275-99.)   After

13 administering a "battery of psychological tests," Dr. Dunbar diagnosed

14 plaintiff with:   polysubstance dependence (in early remission); adult

15 antisocial behavior; depressive disorder; adjustment disorder; cognitive

16 disorder; PTSD; personality disorder NOS; and closed head injury - NOS.

17 (A.R. 299.)   He assessed her with a GAF score of 50.   (*Id.*)   Dr. Dunbar

18 noted that plaintiff had severe psycho-social stressors in the following

19 categories:   social/interpersonal, occupational/work, using health care,

20 housing/domestic, and economic/money.   (*Id.*)   He opined, *inter alia*,

21 that:   plaintiff's verbal reasoning is in the "low-normal to borderline

22

23      [7]   The ALJ also rejected Dr. Demos' finding that plaintiff's
24 "drug use has created an irreversible organic condition that cannot be
   changed."   (A.R. 29.)   The ALJ stated that there was no objective
25 support for Dr. Demos' finding, because there is "evidence of
   methamphetamine use in the file, but not that it has created an
26 irreversible condition."   (*Id.*)   The Court does not find Dr. Demos'
   finding that plaintiff's drug use created an irreversible organic
27 condition germane to the ALJ's rejection of the limitations with which
   Dr. Demos assessed plaintiff, particularly as there is other evidence in
28 the record that plaintiff suffered an "organic brain syndrome" as a
   result of a gun shot wound to the head.   (A.R. 301, 310, 321.)

14

range"; she is currently substantially limited in her ability to perform major life activities that include self care, working without direct supervision, performing schoolwork, and/or learning; she has significant restriction in abstract problem solving; and plaintiff's psychological symptoms constitute her primary occupational disability. (A.R. 297-99.) Dr. Dunbar noted that plaintiff has "significant restriction of critical scholastic and occupational abilities that without assistance . . . will restrict [her] capacity for occupational success and self-care." (A.R. 298.)

The ALJ does not appear to have considered, let alone weighed and given appropriate reasons for rejecting, Dr. Dunbar's opinion. (Joint Stip. at 19.)  The Commissioner contends that this failure does not constitute reversible error, because Dr. Dunbar's opinion is consistent with the ALJ's RFC determination that plaintiff retained the ability to perform "simple, routine, tasks." (Joint Stip. at 20-21.)  As this case is being remanded for the reasons set forth above and, thus, the ALJ's RFC determination may change, the Court need not address this.   On remand, the ALJ should revisit and properly consider Dr. Dunbar's opinion.

D.   Dr. Halimah McGee

Dr. McGee, whose opinion, as noted *supra*, the ALJ afforded "great weight," could not have reviewed the reports of Dr. Allee, Dr. Demos, or Dr. Dunbar, because Dr. McGee's evaluation of plaintiff pre-dates their reports.  It appears therefore that Dr. McGee's assessment of plaintiff is not based on a sufficiently *complete* and *updated* picture of

plaintiff's condition, particularly because plaintiff's mental condition seems to have worsened over time.

Accordingly, it is unclear whether Dr. McGee's opinion, in fact, contradicts the opinions of Dr. Allee, Dr. Demos, and Dr. Dunbar or, instead, reflects plaintiff's abilities at an earlier time period.  The ALJ may determine that a consultative examination, based upon a complete and updated review of the medical record, is appropriate under the circumstances.

## II.   On Remand, The ALJ Should Reassess Plaintiff's Credibility.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work

record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.   *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 416.929(c).

Here, the ALJ concluded that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms."   (A.R. 28.) Significantly, the ALJ cited no evidence of malingering by plaintiff. Nonetheless, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible" to the extent they varied from the ALJ's own RFC assessment.   (*Id.*)   Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

The ALJ principally relied on inconsistencies between plaintiff's statements and the objective medical evidence, as well as on other statements she made regarding her condition and limitations, in rejecting her credibility.   (A.R. 30.)

First, the ALJ noted inconsistencies in plaintiff's statements regarding the circumstances surrounding her gun shot wound.   (*Id.*)   As noted by the ALJ, plaintiff reported that the gun shot to her head was self-inflicted.   (A.R. 53, 178, 336.)   Plaintiff also reported that a friend shot her in the head during an argument.   (A.R. 235-36.)   Thus, because the ALJ can use ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

17

statements concerning the symptoms, and other testimony by the claimant that appears less than candid, <u>Smolen</u>, 80 F.3d at 1284, this was a clear and convincing reason for discounting plaintiff's testimony.

Next, the ALJ found that plaintiff's testimony regarding her daily activities was contradicted by statements made by her friend, Michael Moss, and other statements plaintiff made in her functional capacity report and to Drs. McGee and Allee. (A.R. 30.) During the November 30, 2010 hearing, plaintiff testified, *inter alia*, that she has "a lot of problems remembering things and frustration and anger issues." (A.R. 53.) She can read, but it is hard for her to comprehend what she is reading. (*Id*.) Plaintiff spends her days at home, playing with her dog and doing chores. (A.R. 57.) She testified that she needs assistance when getting dressed and receives reminders to take a shower or bathe regularly. (A.R. 57-58.) She does not go grocery shopping or to the mall. (A.R. 58.) She has a restricted driver's license. (*Id*.) She has severe headaches a couple of times a month that last for days. (A.R. 61.) She also has anxiety and gets "short with people." (A.R. 62.) She cannot be around people, because they "just irritate [her]." (*Id*.)

As noted by the ALJ, plaintiff's friend and roommate, Michael Moss, also stated in a function report that plaintiff needs help getting dressed and needs to be reminded to bathe and shave. (A.R. 189.) He noted that plaintiff does not cook for herself and almost never prepares food or meals. (A.R. 190.) In contrast, plaintiff reported on her function report that she has no problem with her personal care and does not need special reminders to take care of personal needs and grooming.

(A.R. 201.)  She prepares her own meals daily and goes grocery shopping every couple of days.  (A.R. 201-02.)  Plaintiff also reported to Dr. McGee that she goes to the beach, and she does not require assistance with dressing or bathing.  (A.R. 237.)

As to statements plaintiff made to Dr. Allee regarding her daily activities, the Court does not find what, if any, daily activities plaintiff reported to Dr. Allee.  In any event, the ALJ does not specifically identify what plaintiff reported to Dr. Allee that was inconsistent with plaintiff's testimony regarding her daily activities.

The ALJ also rejected plaintiff's testimony that she "has balance problems and that she falls often," because it was not supported by the treatment records.  (A.R. 30.)  Although the Commissioner may not decline to credit the degree of limitation alleged due solely to a lack of objective support, a conflict with the medical evidence is a legitimate factor in determining the extent of a plaintiff's symptoms and/or pain.  Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).  Indeed, there does not appear to be any evidence in the record that plaintiff suffers from any balance issues, and in any event, plaintiff concedes as much.  (Joint Stip. at 22.)

The ALJ's findings regarding plaintiff's credibility is supported by the record, and the ALJ identified specific, cogent reasons for questioning plaintiff's credibility.  However, the inconsistent statements cited by the ALJ may simply reflect that, as other evidence in the record indicates, plaintiff's memory is impaired.  (A.R. 52, 178, 316, 323, 326, 338, 238-39.)  Thus, as this case is being remanded, the

ALJ should reevaluate plaintiff's credibility in the light of a more updated and developed record regarding plaintiff's mental impairments, which may support plaintiff's subjective complaints.

### III. **Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful). On remand, the ALJ must correct the above-mentioned deficiencies and errors. After doing so, the ALJ may need to reassess plaintiff's credibility and RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   July 2, 2013

_Margaret A. Nagle_

_____
                MARGARET A. NAGLE
        UNITED STATES MAGISTRATE JUDGE